**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-96-00464-004-PHX-DLR |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Riley Briones, Jr., | |
| Defendant. | |

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Defendant Riley Briones, Jr.'s asks the Court to reduce his life sentence to time served. (Doc. 456.) The Government opposes the request. (Doc. 459.) After careful consideration, the Court grants Mr. Briones' motion.

**I.   Background**

Mr. Briones grew up in a household where violence, alcohol, and drugs were common. As a teenager, Mr. Briones, along with his father and brother, founded the Eastside Crips Rolling 30's gang, which terrorized the Salt River Indian Reservation for years. In 1994, when Mr. Briones was seventeen, the gang robbed a Subway restaurant. Mr. Briones drove four of his fellow gang members to the restaurant and stayed in the car as the getaway driver while the others went inside and ordered food from Brian Patrick Lindsay, the sole employee working at the time. While Mr. Lindsay prepared the food, the only armed gang member left the restaurant, spoke to Mr. Briones, then returned and fatally shot Mr. Lindsay. The band made off with their food and a bag of cash.

Mr. Briones and four others, including his father and brother, later were indicted on a slew of charges. As relevant here, Mr. Briones was charged with first degree felony murder for his role in the Subway robbery that led to Mr. Lindsay's slaying. The Government extended plea offers of twenty years in prison to all defendants, but Mr. Briones' father insisted he and his sons reject the offers. Mr. Briones did as his father demanded and, in 1997, he went to trial and was convicted on all charges. For the felony murder conviction, the Court sentenced Mr. Briones to what was then mandatory life without the possibility of parole.

But in 2012, the Supreme Court held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders," and instead requires sentencing judges "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller v. Alabama*, 567 U.S. 460, 479-80 (2012). Mr. Briones asked the Court to vacate his original sentence and to resentence him in line with *Miller*. The Court granted the request and, following a resentencing hearing in March 2016, reimposed a life sentence, which was affirmed on direct appeal. Because there is no parole in the federal system, Mr. Briones' sentence effectively is life without the possibility of parole.

## II. Legal Standard

The Court generally can't modify a term of imprisonment after it has been imposed. 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) is an exception to this general rule. Until recently, only the Director of the Bureau of Prisons ("BOP") could file a § 3582(c)(1)(A) motion seeking a sentence reduction on a defendant's behalf. This changed with the First Step Act of 2018, which amended the statute to allow defendants to seek sentence reductions directly. As amended, § 3582(c)(1)(A) now grants the Court broad discretion, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," to "reduce the term of imprisonment (and . . . impose a term of

probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable," so long as the Court finds "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" Although § 3582(c)(1)(A) relief often is called "compassionate release," the statute permits any sentence reduction so long as all factors are satisfied. *See Reynolds v. United States*, 99-CR-520 (NGG), 2022 WL 1444167, at *4 (E.D.N.Y. May 6, 2022).

### III. Analysis

#### A. Administrative Exhaustion

Mr. Briones exhausted his administrative remedies. On August 15, 2022, he filed a request for compassionate release with the warden of the facility in which he is housed, more than thirty days has passed, and his request to the BOP hasn't been granted.

#### B. Extraordinary and Compelling Reasons

Congress didn't define "extraordinary and compelling reasons," except to say rehabilitation *alone* doesn't suffice. 28 U.S.C. § 994(t). Instead, Congress delegated to the Sentencing Commission the task of describing through policy statements "what should be considered extraordinary and compelling reasons for sentence reduction[.]" *Id.* The Sentencing Commission's policy statement regarding compassionate release is found at U.S.S.G. § 1B1.13, but because the Sentencing Commission hasn't updated this statement since the passage of the First Step Act, "there is currently no policy statement from the Sentencing Commission that is 'applicable' to compassionate release motions filed by a defendant rather than by the BOP Director." *United States v. Gaitan-Ayala*, CR. NO. 07-00268 JMS-1, 2023 WL 2404039, at *2 (D. Haw. Mar. 8, 2023) (citing *United States v. Wright*, 46 F.4th 938, 946 (9th Cir. 2022)). "The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Consequently, the Court can "consider *any* extraordinary and compelling

reason for release that a defendant might raise." *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). "The practical effect . . . is that the last two conditions of the compassionate-release statute—that exceptional and compelling reasons exist for a sentence reduction and that such a reduction be consistent with applicable policy statements issued by the Sentencing Commission—collapse into a single requirement." *United States v. Torres*, 464 F.Supp.3d 651, 659 (S.D.N.Y. 2020) (quotation and citation omitted).

The Court finds four circumstances collectively rise to the level of extraordinary and compelling reasons warranting a sentence reduction: Mr. Briones has demonstrated (1) remarkable rehabilitation and (2) a dedication to his community, (3) his life sentence is an outlier among other juvenile offenders resentenced after *Miller*, and (4) his life sentence far exceeds the average sentence for murder in the federal system.

### 1. Rehabilitation

Mr. Briones has been incarcerated for over twenty-seven years,[1] during which he has transformed. Despite facing a lifetime behind bars, Mr. Briones hasn't given up on himself and has maintained, for all that time, a spotless prison record, an extraordinarily rare accomplishment for such a lengthy period of incarceration. The evidence submitted with his motion establishes extraordinary effort and success at spiritual and vocational self-improvement. Mr. Briones renounced his gang affiliations early in his incarceration and has maintained consistent employment in prison, working in food services where he's gained valuable work skills.

According to Louis Eichenlaub, a criminal justice consultant who spent decades in a wide range of leadership and staff roles at the BOP and who submitted a declaration in support of Mr. Briones' motion: "Mr. Briones' perfect record of compliance with both BOP staff members' expectations and the BOP rules and regulations is *exceptional*, and demonstrates his unwavering dedication to redemption and self-improvement." (Doc. 456-

---

[1] Mr. Briones was arrested and detained on December 21, 1995 and had been incarcerated for twenty years and ninety-seven days as of March 29, 2016, the date of his post-*Miller* resentencing.

- 4 -

2 at 7.) Indeed, the Ninth Circuit recognized that "the only plausible motivation for [Mr. Briones'] spotless prison record was improvement for improvement's sake." *United States v. Briones*, 929 F.3d 1057, 1066-67 (9th Cir. 2019) (en banc), *cert. granted*, *judgment vacated*, 141 S. Ct. 2589 (2021). If there were any doubt then, the Ninth Circuit's observation certainly is true now; Mr. Briones has maintained his spotless prison record and self-improvement efforts even after this Court reimposed his life sentence and after that sentence was affirmed on direct appeal. Though Mr. Briones' rehabilitation can't, by itself, support a sentence reduction, it supports such relief when considered alongside the other reasons described below.

### 2. Dedication and Contributions to Community

Mr. Briones' conduct in prison demonstrates more than mere rehabilitation. Rehabilitation is "[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes." Rehabilitation, Black's Law Dictionary (11th ed. 2019). "In other words, the ordinary meaning of 'rehabilitation' is a change in a defendant's circumstances that leads to a return to society with no further criminal activity." *Torres*, 464 F.Supp.3d at 663-64.

Here, the evidence shows that, beyond self-improvement, Mr. Briones has dedicated himself to improving the lives of others. For example, while in prison, Mr. Briones was housed with his father for sixteen years. Instead of blaming his father for the violence and addiction he experienced as a child, Mr. Briones bonded and helped his father work through his anger issues. His father has since been released from prison and, for the first time, is sober and managing his anger in a way that has fostered a healthy relationship with his wife. He credits Mr. Briones for his recovery.

Mr. Briones also has earned a reputation as a positive force within the prison. He has stayed involved in Bible study and, while in Beaumont Prison, spoke to and encouraged members of the prison gangs to live in peace with each other. Some took his advice to heart. The Court finds Mr. Briones behavior and conduct while incarcerated goes beyond

mere rehabilitation, demonstrating a dedication and desire to contribute positively to the greater community.

### 3. Post-*Miller* Resentencing Disparities

Since resentencing Mr. Briones in 2016, the Court has a better longitudinal picture of *Miller*'s application. Most juvenile offenders resentenced after *Miller* either were released or given significantly shorter sentences. (Doc. 456-18.) Mr. Briones is one of only three juvenile offenders resentenced to life after *Miller*. The offenses of those two other offenders have significant aggravating factors that don't exist in this case, and neither defendant maintained anything comparable to Mr. Briones' spotless prison record. Time has revealed the reimposition of Mr. Briones' life sentence to be an outlier. This unwarranted sentencing disparity is an extraordinary and compelling reason favoring a sentence reduction.

### 4. Broader Sentencing Disparities

Finally, Mr. Briones' sentence also is disproportionate to the average defendant convicted of murder, juvenile or adult, which as of 2016 is 17.5 years. U.S. Sentencing Comm'n, 2016 Sourcebook of Federal Sentencing Statistics, Table 13: Sentence Length In Each Primary Offense Category, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2016/Table13.pdf. Though the facts of each case are different and can materially bear on the length of a sentence, the size of the disparity is alarming on its face. Mr. Briones' life sentence also is substantially longer and more severe than the twenty-year deal the Government had offered him before trial. Mr. Briones' spotless prison record, coupled with his efforts to influence and improve the lives of his fellow prisoners, is powerful evidence that the time Mr. Briones has spent behind bars is sufficient to meet the goals of sentencing, particularly when the Government believed a twenty-year sentence sufficed before trial. These broader sentencing disparities support a sentence reduction in this case.

### C. Section 3553(a) Factors

The Court also must consider whether a reduced sentence comports with the sentencing factors set out in § 3553(a). Among those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need to avoid unwarranted sentence disparities," and the need for the sentence "to reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training[.]" 18 U.S.C. § 3553(a). Having considered these factors, the Court finds a sentence reduction warranted.

Mr. Briones' offense unquestionably was serious. As the Court noted during Mr. Briones' re-sentencing in March 2016:

> This robbery was planned, maybe not by [Mr. Briones] but he took over and was all in once the plan was developed. He drove everybody there. He appeared to be the pillar of strength for the people involved to make sure they executed the plan. The murder of [Mr. Lindsay] was planned. It wasn't an accident, it wasn't unexpected. Although [Mr. Briones] did not pull the trigger, he was in the middle of the whole thing. He stayed in the car, apparently, to avoid responsibility. And circumstantially, at least, it appears that [he] was involved in the final decision to kill the young clerk

(Doc. 363 at 105-06.) In reimposing Mr. Briones' life sentence, the Court observed "some decisions have lifelong consequences." (*Id.* at 105.) Those consequences aren't borne solely by Mr. Briones. As illustrated by the victim impact statements submitted during Mr. Briones' re-sentencing and in opposition to the current motion (Docs. 459-1; 472-1), Mr. Lindsay's family and friends will suffer the devastating consequences of Mr. Briones' actions for the rest of their lives. The criminal justice system can't come close to repairing the damage Mr. Briones caused.

Section 3553(a), however, calls upon the Court to consider more than the seriousness of the offense, and the remaining factors do not support continued incarceration. The more than twenty-seven years Mr. Briones has spent in prison meet the

goals of sentencing. As discussed, Mr. Briones today is not the same person who committed the horrendous crimes of his youth. Mr. Briones' rehabilitation has been extraordinary. Further incarceration is not needed to protect the public or to deter Mr. Briones from reoffending—indeed, the Government doesn't argue that Mr. Briones today presents a danger to the community. His life sentence is an outlier among juvenile offenders resentenced after *Miller* and disproportionate to the average murder sentence in the federal system, suggesting that a reduced sentence would afford adequate deterrence. Nor is further incarceration necessary to provide Mr. Briones with education and training. The evidence shows Mr. Briones has a concrete reentry plan and will be released to a highly supportive community network, where he can employ vocational skills learned in prison. On balance, the time Mr. Briones has served incarcerated promotes respect for the law and provides a just punishment, and a sentence reduction to time served will avoid unwarranted sentence disparities and adequately account for Mr. Briones' history and characteristics.

### D. Conclusion

Compassionate release is a safety valve for situations in which a defendant's circumstances have changed significantly enough that the length of continued incarceration is no longer equitable. *United States v. Chen*, 48 F.4th 1092, 1098-99 (9th Cir. 2022). The Court has taken a careful, holistic look at the circumstances—including Mr. Briones continued self-improvement, rehabilitation, and community contributions since his resentencing in 2016, and the better longitudinal picture of post-*Miller* sentences imposed on other juvenile defendants—and finds them extraordinary and compelling enough to trigger this safety valve. Other similarly situated defendants have been sentenced to less than life, Mr. Briones has served decades in prison, he has consistently worked to improve himself and his fellow prisoners, and remarkably has not incurred a single disciplinary infraction. Against this backdrop and on balance, a time-served sentence meets the goals of sentencing set out in § 3553(a). Accordingly,

**IT IS ORDERED** that Mr. Briones' motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 456) is **GRANTED**. Mr. Briones' sentence is reduced to

time served. Upon Mr. Briones' release from imprisonment, he shall be placed on supervised release for a term of five years on Count 1 of the indictment, consistent with the terms set forth in the amended judgment dated March 30, 2016. (Doc. 355.) An amended judgment reflecting Mr. Briones' modified sentence and conditions of supervised release will be forthcoming.

Dated this 3rd day of May, 2023.

Douglas L. Rayes
United States District Judge